**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal No. 12-240 |
| | ) | Civil Action No. 19-37 |
| JESSE NATHANIEL PENN, JR., | ) | Judge Nora Barry Fischer |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

I.     INTRODUCTION

In this case, Defendant Jesse Nathaniel Penn, Jr. ("Penn") moves pursuant to 28 U.S.C. §

2255 to vacate, set aside or correct his conviction for violating 18 U.S.C. § 922(g)(1) and sentence

of 204 months' incarceration.  (Docket Nos. 201; 208).  Specifically, Penn claims that his trial

counsel rendered ineffective assistance of counsel during pretrial suppression proceedings and plea

negotiations.  (Docket Nos. 201; 204; 208; 209; 220; 238).  The Government counters that Penn

has failed to meet his burden to demonstrate that his conviction and sentence should be set aside.

(Docket Nos. 217; 222).  Penn's motions have been exhaustively briefed and supplemented with

relevant evidence from the parties.  After careful consideration of the parties' arguments, and for

the following reasons, Penn's motions [201] [208] are denied to the extent he seeks to vacate his

conviction and sentence based upon alleged ineffective assistance of counsel.

II.     BACKGROUND

The essential facts of this matter were set forth by the United States Court of Appeals for

the Third Circuit.

In the spring of 2011 Penn was staying at his estranged wife Gineara's house. On June 16, law enforcement officers entered Gineara's home to arrest Penn for a probation violation. While securing the premises, an officer noticed a bulletproof vest in plain sight in the basement. Other officers found Penn on the second floor. After obtaining a search warrant for contraband related to the vest, officers discovered that a backpack near the vest contained a pink .380 Taurus handgun, a Smith & Wesson revolver, and ammunition. About a foot from the backpack, officers found a shoebox containing official papers in Penn's name and three cell phones. On the car ride to the county jail, Penn asked what had been found in the house. When a detective told him "two guns and a vest," Penn asked "is there anything I can do to make those guns go away?"

*United States v. Penn*, 616 F. App'x 524, 525 (3d Cir. 2015).  The probation warrants were issued after Penn was identified as a suspect in a June 7, 2011 shooting of David Debold in East Pittsburgh and charged with related offenses in state court.  (Docket No. 203).  He was acquitted of those charges after a trial in state court in March of 2013.  (*Id.*).

However, Penn was charged in federal court with violating 18 U.S.C. § 922(g)(1) for being a felon in possession of firearms and ammunition which were seized on June 16, 2011.  (Docket No. 1).  The case was prosecuted by former Assistant United States Attorney Paul Kovac, defended by former Assistant Federal Public Defender W. Penn Hackney, and presided over by the Honorable Terrence F. McVerry, all of whom have since retired.  (*See Docket Report*).  During pretrial proceedings, Penn moved to suppress the firearms and other evidence seized during the June 16, 2011 searches.  A hearing was held and Judge McVerry denied his motion, finding that Gineara Penn had consented to the officers' entry into the residence and that the protective sweep of the house was reasonable under Fourth Amendment jurisprudence.  *See United States v. Penn*, 2013 WL 5230802 (W.D. Pa. Sept. 17, 2013).  Penn went to trial and was convicted of violating 18 U.S.C. § 922(g)(1).  (Docket No. 75).  At sentencing, Penn was found to be subject to enhanced

penalties under the Armed Career Criminal Act 18 U.S.C. § 924(e) given his three prior serious drug offenses and was sentenced to 204 months' incarceration. (Docket Nos. 86; 97).

Penn appealed his conviction and sentence. The Third Circuit, finding error in the admission of Rule 404(b) evidence regarding a prior firearms conviction, vacated the judgment and remanded for a new trial. *Penn*, 616 F. App'x at 527. The Court of Appeals declined to consider Penn's other argument challenging Judge McVerry's ruling precluding certain text message evidence. *Id.* at n.2. On remand, a pretrial conference was held on June 5, 2015 and there was some discussion between AUSA Kovac and AFPD Hackney concerning a potential plea but a plea agreement was not reached. A second trial was held in August of 2015 and Penn was once again convicted of violating § 922(g)(1). (Docket No. 151). In advance of the sentencing hearing, the defense was afforded multiple continuances to prepare and submit arguments challenging the ACCA enhancement. (Docket Nos. 158-161; 163-168; 171). Through counsel, Penn lodged objections to his designation as an armed career criminal, but Judge McVerry overruled those objections, and sentenced him once again to 204 months' incarceration. (Docket Nos. 172; 173; 174).

Penn appealed this judgment as well, but the Court of Appeals affirmed his conviction and sentence on August 30, 2017. *See United States v. Penn*, 870 F.3d 164 (3d Cir. 2017). In a lengthy precedential opinion, the Court of Appeals denied his challenge to the voir dire. *Id.* The Court of Appeals also rejected his arguments that the felon-in-possession statute was unconstitutional and that his prior convictions were not "serious drug offenses" under the ACCA, as both were foreclosed by binding Third Circuit precedent. *Id.* at n.2 (citing *United States v. Singletary*, 268 F.3d 196, 204-05 (3d Cir. 2001) and *United States v. Henderson*, 841 F.3d 623, 631 (3d Cir. 2016)).

Penn filed a petition for a writ of certiorari with the Supreme Court of the United States but it was denied on January 8, 2018. *Penn v. United States*, 138 U.S. 700 (2018).

Penn initiated these § 2255 proceedings with a series of filings received by the Court on January 15, 2019 including a motion to vacate, motion for discovery, affidavit and brief in support. (Docket Nos. 201; 202; 203; 204). He also attached documentary evidence to his submissions. (Docket No. 204). In response to the Court's *Miller* Order, Penn filed an amended motion to vacate, brief in support and a supplement on February 21, 2019. (Docket Nos. 208; 209; 210). After receiving extensions of time, the Government submitted its response and supporting evidence on June 13, 2019. (Docket No. 217). Penn countered by filing a motion for summary judgment on August 14, 2019 which the Court construed as a reply brief. (Docket No. 220). The Government filed a sur-reply brief on August 30, 2019. (Docket No. 222).

On October 16, 2019, Penn separately submitted a motion for leave to file a supplemental pleading raising a claim under *Rehaif v. United States*, 139 S. Ct. 2191 (2019). (Docket No. 227). The Government responded on October 25, 2019. (Docket No. 230). Penn then proceeded to file additional motions seeking the U.S. Attorney's Office and Federal Public Defender's Office to produce additional evidence concerning plea negotiations including emails to him. Both offices responded that no such emails existed, as they had previously. After receiving leave of court, Penn submitted a reply brief as to the *Rehaif* issue and a further supplement regarding the plea negotiations. (Docket No. 238). Counsel was appointed to represent Penn on the *Rehaif* claim on May 28, 2020. (Docket No. 239).

Given all of these submissions, Penn's motions to vacate alleging ineffective assistance of counsel are fully briefed and ripe for disposition.

III.    LEGAL STANDARD

A prisoner in federal custody may move to vacate his sentence under 28 U.S.C. § 2255 if such "sentence was imposed in violation of the Constitution or laws of the United States."  28 U.S.C. § 2255(a).  As a collateral challenge, a motion under § 2255 is "reviewed much less favorably than a direct appeal of the sentence."  *United States v. Travillion*, 759 F.3d 281, 288 (3d Cir. 2014).  Section 2255 relief "is available only when 'the claimed error of law was a fundamental defect which inherently results in a complete miscarriage of justice, and . . . present[s] exceptional circumstances where the need for the remedy afforded by the writ . . . is apparent.'"  *Id.* (quoting *Davis v. United States*, 417 U.S. 333, 346 (1974)).

"A prisoner seeking relief on the grounds of ineffective assistance of counsel bears the burden to demonstrate two requirements," *United States v. Seeley*, 574 F. App'x. 75, 78 (3d Cir. 2014), which were initially set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). In order to prevail on a claim of ineffective assistance of counsel under Strickland, a defendant "must establish that (1) the performance of counsel fell below an objective standard of reasonableness; and, (2) counsel's deficient performance prejudiced the defense." *United States v. Otero*, 502 F.3d 331, 334 (3d Cir. 2007) (citing *Strickland*, 466 U.S. at 688, 694); *see also Roe v. Flores-Ortega*, 528 U.S. 470, 476-77 (2000) (citing *Strickland*, 466 U.S. at 688, 694) (same). The United States Court of Appeals for the Third Circuit has "endorsed the practical suggestion in *Strickland* [that the Court may] consider the prejudice prong before examining the performance of counsel prong 'because this course of action is less burdensome to defense counsel.'" *United States v. Lilly*, 536 F.3d 190, 196 (3d Cir. 2008) (quoting *United States v. Booth*, 432 F.3d 542, 546 (3d Cir. 2005)); *see also Strickland*, 466 U.S. at 697 ("If it is easier to

dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

A district court must order an evidentiary hearing in a federal habeas case if a defendant's § 2255 allegations raise an issue of material fact. *United States v. Biberfeld*, 957 F.2d 98, 102 (3d Cir. 1992). But, if there is "no legally cognizable claim or the factual matters raised by the motion may be susceptible of resolution through the district judge's review of the motion and records in the case," the motion may be decided without a hearing. *United States v. Costanzo*, 625 F.2d 465, 470 (3d Cir. 1980); *see also United States v. Tolliver*, 800 F.3d 138, 140-41 (3d Cir. 2015). If a hearing is not held, the district judge must accept the defendant's allegations as true "unless they are clearly frivolous on the basis of the existing record." *Gov't of Virgin Islands v. Bradshaw*, 726 F.2d 115, 117 (3d Cir. 1984). Similarly, "vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court." *United States v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000). In this case, the Court finds no need for an evidentiary hearing because the record conclusively establishes that Defendant is not entitled to relief.

IV.   DISCUSSION

Penn asserts that his trial counsel was ineffective during suppression proceedings and plea negotiations. (Docket Nos. 201; 203; 204; 208; 209; 210; 220; 238). The Government counters that neither contention warrants vacating his conviction or sentence. (Docket Nos. 217; 222). Having considered the parties' positions in light of the evidence of record, the Court concurs with the Government. The Court now evaluates each argument, in turn.

A.   *Suppression Proceedings*

At the outset, Penn does not allege that his counsel was ineffective for litigating the suppression motion which was denied in this case. (Docket Nos. 201; 203; 204; 208; 209; 210;

220; 238).  Penn also declined to appeal the Court's rulings that the searches and seizures did not

violate his Fourth Amendment rights because Gineara Penn consented to the officers' initial entry

into the residence and a ballistic vest was observed by the officers during a protective sweep.

However, Penn maintains that his trial counsel was ineffective for failing to raise two separate

arguments during suppression proceedings: (1) the firearms seized from his wife's residence

should have been suppressed under *Franks v. Delaware*, 438 U.S. 154 (1978), due to alleged false

statements in the search warrant; and, (2) his term of probation had expired at the time the arrest

warrants were issued due to probation violations.  (*See id*.).  The Government advocates that Penn

has not met his burden to show that his trial counsel was ineffective or that he was prejudiced by

the advice of his counsel.  (Docket Nos. 217; 222).

1.  *Franks* Hearing

As noted above, this Court has discretion to first consider the "prejudice prong" of the

*Strickland* analysis.  *Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness

claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course

should be followed.").  Relevant here, the Supreme Court has explained that:

> Where defense counsel's failure to litigate a Fourth Amendment
> claim competently is the principal allegation of ineffectiveness, the
> defendant must also prove that his Fourth Amendment claim is
> meritorious and that there is a reasonable probability that the verdict
> would have been different absent the excludable evidence in order
> to demonstrate actual prejudice.

*Kimmelman v. Morrison*, 477 U.S. 365, 375, 382, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986).  The

Third Circuit has held that for a defendant to demonstrate ineffective assistance of counsel for

failing to raise a *Franks* claim, he must meet the demanding standard to show that the affiant

knowingly or recklessly made material false statements in the warrant.  *See United States v. Lamar*

*Brown*, 283 F. App'x 63, 65 (3d Cir. 2004).  In addition, the affiant's statements are evaluated at

7

the time the warrant was drafted such that a witness's subsequent recantation of statements previously made to law enforcement officers does not, by itself, establish that a *Franks* hearing is necessary or that evidence should be suppressed.  *See United States v. Allen Brown*, 631 F.3d 638, 649 (3d Cir. 2011) ("[A] court may properly infer that an affiant acted with reckless disregard for the truth where his affidavit contains an averment that was without sufficient basis at the time he drafted it."); *see also United States v. Blair*, Crim. No. 12-275, 2013 WL 5593001, at *5 (W.D. Pa. Oct. 10, 2013) (A witness' "subsequent decision to recant his statements does not establish that [the detective] knowingly and intentionally or with reckless disregard for the truth included false information in the affidavit.").

Here, Penn alleges that his counsel was ineffective for failing to challenge the June 16, 2011 search warrant on the basis that statements referenced in the affidavit supporting same were later contradicted by evidence presented at his state court trial in March of 2013.  (*See* Docket No. 204).  Specifically, Penn claims that his counsel should have argued that  Detective Steve Hitchings' statements that the shooting victim, David Debold, had identified Defendant as his assailant on June 10, 2011 were materially false because Debold purportedly testified at his state court trial nearly two years later that he was in a coma, and therefore could not have made such statements.  (*Id*.).  However, Penn has not established that the affiant, Detective Patrick Miller, had any reason on June 16, 2011 to doubt the veracity of information provided to him by other law enforcement officers involved in the investigation which he included in the affidavit.  *See Brown*, 631 F.3d at 649.  It is this Court's opinion that neither Debold's subsequent testimony nor Penn's later acquittal on the state charges related to the shooting undermine the magistrate's finding of probable cause to search the residence on June 16, 2011.  *See e.g., Blair*, 2013 WL 5593001, at *5; *Case v. Tritt*, Civ. A. No. 14-7124, 2015 WL 4557332, at *10 (E.D. Pa. July 29, 2015) ("as a

simple matter of logic, trial counsel could not have asked for a pre-trial *Franks* hearing on the basis of the witness recantations, since he did not know pre-trial that Adams and Thompson would disavow their statements.").

Penn's claim also fails for additional reasons.  In this regard, "[a] warrant is to be upheld on review 'as long as there is a substantial basis for a fair probability that evidence will be found.'" *United States v. Folks*, 452 F. Supp. 3d 238, 254 (W.D. Pa. 2020) (quoting *United States v. Conley*, 4 F.3d 1200, 1205 (3d Cir. 1993). "Proof beyond a reasonable doubt is not required." *Id*. at 254 (citing *United States v. Miknevich*, 638 F.3d 178, 183 (3d Cir. 2011)).  "[I]t is [also] well settled that 'direct evidence' of the existence of contraband or other illegality is not required to demonstrate probable cause of a location to be searched." *Id*. at 255. "Rather, probable cause may be demonstrated through multiple factors, including: the experience of the officers; information learned from other law enforcement agencies; tips from confidential informants; and other information gleaned from investigative action." *Id*.  Finally, "[a] warrant may be upheld by a reviewing court if the challenged information is excised from the affidavit and the remaining information continues to support a finding of probable cause for the issuance of the warrant." *Id*. at 255 (citations omitted).

In this Court's estimation, if the challenged statements regarding Debold's identification of Penn as his assailant were excised from the affidavit, the other information provided in the warrant plainly support a finding of probable cause to search the residence because the officers observed direct evidence of contraband within the residence.  *See Folks,* 452 F. Supp. 3d at 255. To that end, the remaining portions of the affidavit state the following:

> On 6/16/2011 detectives from the homicide unit went to 7139 Harrison St. in Swissvale Borough with an arrest warrant for [JESSE] PENN for a probation violation.  Upon making entry to the residence, PENN was found in a second floor bedroom, taken into

custody, and transported to ACPD Headquarters for processing. In a protective sweep of the residence detectives observed a ballistic vest in a storage room in the basement. The vest was in plain view and inside a ballistic vest carrier. Based upon your affiant's experience and training combined with PENN's extensive history of narcotics and illegal weapons it is your affiant's belief that there is a possibility that illegal firearms and/or narcotics are located inside the residence.

(Docket No. 217-10 at 3). Since the officers observed a ballistic vest in plain view within the residence where Penn was located, there is a certainly a reasonable probability that additional contraband would be found therein. *See Conley*, 4 F.3d at 1205. Therefore, the local magistrate had sufficient probable cause to issue the warrant to search the residence. *Id.* All told, "[b]ecause a motion for a *Franks* hearing would not have been granted, and if it were, it would not have borne fruit, [defendant] cannot demonstrate any prejudice from his attorney's 'failure' to request such hearing." *United States v. Askew*, Civ. A. No. 08-784, 2010 WL 457535, at *15 (W.D. Pa. Feb. 2, 2010) (Schwab, J.).

## 2.   Timing of Probation Warrants

Penn's argument that his counsel was ineffective for not challenging the probation warrants given the expiration of his term of probation is likewise without merit. Pennsylvania law is settled that a defendant can violate his probation based on conduct which occurred during the term of probation, even if the violation petition is filed after the term expired. *See Comm. v. Smith*, 860 A.2d 142, 145 (Pa. Super. 2004) ("[T]he Commonwealth may, under certain circumstances, file allegations of a violation of probation even after the probationary term has expired […] [including when] the violation has occurred so late in the probationary term that the Commonwealth cannot actually file the paperwork in time."). Here, Debold was shot three days prior to the expiration of Penn's state probation on June 10, 2011 and the probation violation warrants were issued within a week of the shooting. *See Com. v. Workman*, No. 14 MDA 2014, 2014 WL 10790359, at *3 (Pa.

10

Super. Ct. Oct. 10, 2014) ("[I]n cases where the revocation proceeding cannot be commenced before the expiration of the term, a defendant will not be entitled to a windfall based on the timing of his violation or its discovery.").  Therefore, the arrest warrants were validly issued under state law and Penn was not prejudiced by the failure of his counsel to lodge an objection to the timing of the arrest warrants in the suppression proceedings.  *Strickland*, 466 U.S. at 697.

For all of these reasons, Penn's motion to vacate challenging counsel's performance during the suppression proceedings is denied.

### B.  Plea Negotiations

Penn next asserts that his counsel provided ineffective assistance of counsel during plea negotiations.  (Docket Nos. 201; 204; 208; 209; 220; 238).  Specifically, he claims that he rejected a plea agreement offer from the Government because his counsel erroneously advised him that if he was convicted at trial, he would no longer be deemed an armed career criminal and subject to an enhanced sentence following the Supreme Court's landmark decision of *Johnson v. United States,* 576 U.S. 591 (2015).  (*Id.*).  He alleges that he would have accepted the Government's purported offer of 120 months' incarceration absent such erroneous advice.  (*Id.*).  The Government responds that Penn has failed to meet his burden to demonstrate that a plea agreement offer was made by the Government such that he was not prejudiced by any such erroneous advice by his counsel.  (Docket Nos. 217; 222).  The Court once again concurs with the Government.

Initially, this Court set forth the relevant legal principles governing Penn's claim in *United States v. Slane*, Civ. A. No. 14-938, 2015 WL 728481, at *15 (W.D. Pa. Feb. 19, 2015).  To that end:

> The Supreme Court of the United States recognized in *Frye* and *Lafler* that the Sixth Amendment right to counsel provides that an accused is entitled to the effective assistance of counsel at all phases of the prosecution of criminal charges, *see Missouri v. Frye*, ——

U.S. ——, ——, 132 S.Ct. 1399, 1404, 182 L.Ed.2d 379 (2012), including during the plea-bargaining process and the entry of a guilty plea. *Lafler v. Cooper*, —— U.S. ——, ——, 132 S.Ct. 1376, 1384, 182 L.Ed.2d 398 (2012). The Supreme Court held in *Frye* that a criminal defense lawyer was constitutionally ineffective for failing to communicate a plea agreement offer to his client and expounded in *Lafler* that "[i]f a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it." Counsel is required to "give a defendant information sufficient 'to make a reasonably informed decision whether to accept a plea offer.'" *Shotts v. Wetzel*, 724 F.3d 364, 376 (3d Cir. 2013) (quoting *United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992)). A court may find counsel to be ineffective when the advice given is "so incorrect and so insufficient that it undermined the defendant's ability to make an intelligent decision." *Day*, 969 F.2d at 43.

When a plea is rejected, "[h]aving to stand trial, not choosing to waive it, is the prejudice alleged." *Lafler*, 132 S.Ct. at 1385. In order to prove prejudice where a defendant alleges inadequate advice in considering a plea offer,

> a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Id.*; *see also United States v. Seeley*, 13–2083, 574 F. App'x 75 (3d Cir. 2014) (quoting same).

*Slane*, 2015 WL 728481, at *15.

The law is well established that "defendants have 'no right to be offered a plea,'" and "[i]f no plea offer is made ... [ineffective assistance of counsel] simply does not arise." *Lafler*, 132 S.Ct. at 1385. Further,

[t]he existence of a plea offer is a factual determination. *See Guerrero v. United States*, 383 F.3d 409, 417 (6th Cir.2004). Plea offers are examined under the same standards as other contracts. *Puckett v. United States*, 556 U.S. 129, 137, 129 S.Ct. 1423, 173 L.Ed.2d 266 (2009); *United States v. Moscahlaidis*, 868 F.2d 1357 (3d Cir.1989); *United States v. Odachyan*, No. 11–50253, 2014 WL 1491885 (9th Cir. Apr.17, 2014).

*Herrera–Genao v. United States*, No. CIV. 12–6119, 2014 WL 6386807, at *8 (D.N.J. Nov.14, 2014); *see also United States v. Podlucky*, No. CA 13–1451, 2014 WL 7369841, at *3 (W.D.Pa. Dec.29, 2014) ("As noted, in construing a plea agreement, the general principles of contract law apply."). Like other contractual offers, plea offers may be oral or written and, if in writing, need not be set forth in any particular form. *See United States v. Sanchez*, 562 F.3d 275, 280 (3d Cir. 2009) (overruled on other grounds) ("Just as contracts are not invalid simply because they are made orally, the same is true of plea agreements.").

…

All purported offers are analyzed under general contract law principles, pursuant to which communications concerning preliminary negotiations do not rise to the level of an offer unless the parties manifest an intention to be bound to terms set forth in the communication which are sufficiently definite and complete. *See Reed v. Pittsburgh Bd. of Public Educ.*, 862 A.2d 131, 135 (Pa.Commw.Ct. Nov. 18, 2004) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 26 (1979)) ("A manifestation of willingness to enter into a bargain is not an offer if the person to whom it is addressed knows or has reason to know that the person making it does not intend to conclude a bargain until he has made a further manifestation of assent."); *cf. Podlucky*, 2014 WL 7369841, at *3 ("Under general contract law, 'agreements to agree' are not generally enforceable."). "Incompleteness of terms is one of the primary reasons statements of preliminary negotiation are not deemed offers." *Id.* at 136 (citing RESTATEMENT (SECOND) OF CONTRACTS § 33 cmt. c (1979)). Rather, "[a]n agreement is definite if it indicates that parties intended to make a contract and if there is an appropriate basis upon which a court can fashion a remedy." *Id.* at 135 (quoting *Biddle v. Johnsonbaugh*, 444 Pa.Super. 450, 664 A.2d 159, 163 (Pa. Super. Ct. 1995)). "If a court, due to indefiniteness or incompleteness, is unable to determine if a contract

was performed, the court must find no contract existed in the first place." *Id.* (citing *Ingrassia Constr. Co., Inc. v. Walsh*, 337 Pa.Super. 58, 486 A.2d 478 (Pa. Super. Ct. 1984)). Issues of contract formation and specific enforcement thereof are matters of law for the Court. *See e.g., United States v. Gonzalez*, 918 F.2d 1129, 1133–34 (3d Cir. 1990) (denying enforcement of plea agreement offer that was withdrawn by the prosecution and holding that an "agreement was never reached, the proposal was withdrawn and the agreement was never presented to the district court. It is axiomatic that a plea agreement is neither binding nor enforceable until it is accepted in open court.").

*Slane*, 2015 WL 728481, at *16–17.

Having reviewed the evidence in light of these standards, the Court finds that Penn's claim fails for several independent reasons.

First, the timing of events indicates that an evidentiary link is lacking between Penn's initial rejection of the prosecutor's purported offer of a 10-year sentence and counsel's supposed advice as to the Supreme Court's decision in *Johnson* because the defense made a counterproposal for a lesser sentence <u>before</u> the Supreme Court's ruling.   To this end, defense counsel sent a letter to the prosecutor on <u>June 23, 2015</u>, that stated "in response to your offer of a 10-year sentence … based on a plea to possession of a stolen gun under 18 U.S.C. § 922(j)" and asked "if your office will agree to a sentence of 72 months."  (*WPH Letter of 6/23/15*, Docket No. 217-11).  Meanwhile the *Johnson* case was not issued until <u>June 26, 2015</u> which was several days after the letter was sent.  Naturally, since the letter pre-dates the *Johnson* decision, it makes no reference to that case at all.  Penn also admits that he told his counsel to seek a lesser sentence, as he did in the letter. (Docket No. 203 at ¶ 13). Hence, the defense's decision on June 23, 2015 to make a counterproposal of 72 months' incarceration to the prosecution in response to the purported 10-year offer could not have been made based upon any alleged ineffective assistance regarding *Johnson*.  *See Lafler*, 132 S.Ct. at 1385 ("[A] defendant must show that but for the ineffective

advice of counsel there is a reasonable probability that … the defendant would have accepted the plea.").

Second, Penn simply did not meet his burden under *Lafler* to prove that an enforceable plea agreement offer was made by the prosecution which he would have accepted and would not have been withdrawn by the prosecution due to intervening events.  *See Lafler*, 132 S.Ct. at 1385; *see also United States v. Nguyen*, 619 F. App'x 136, 141 (3d Cir. 2015) ("to establish prejudice, Petitioner must begin by proving that a plea agreement was formally offered by the Government."). To the contrary, Penn's affidavit and the other evidence of record[1] make clear that, at most, preliminary negotiations between counsel took place that never ripened into an enforceable agreement because there was no "meeting of the minds" concerning all of the necessary terms of such an agreement, including the term of incarceration.  *See Slane*, 2015 WL 728481, at *16–17. In this regard, Penn states all of the following:

- On June 5, 2015, during a pretrial conference, "Mr. Kovac, expressed the desire to offer a plea deal rather than go through another trial.  It was said that Mr. Kovac was considering an offer of 10 years."  (Docket No. 203 at ¶ 12).

- "[T]he week following the pretrial conference, during a legal call with Mr. Hackney, it was conveyed that Mr. Kovac was in the process of seeking authority to offer a plea for possession of a stolen firearm in violation of 18 U.S.C. § 922(j)."  (Docket No. 203 at ¶ 14).

- Penn admits that his counsel sent the June 23, 2015 letter making a counterproposal of a lesser sentence at his direction.  "[He]

---

[1]     The Court notes that the evidence concerning plea negotiations consists of Penn's affidavit, his counsel's June 23, 2015 letter and his counsel's handwritten notes.  He has claimed that additional emails existed but both the U.S. Attorney's Office and Federal Public Defender's Office have affirmed that they do not exist.  (*See e.g.*, US DOJ Resp. to FOIA Request, Def Ex. "E" Docket No. 204-5 ("A search for records located in the United States Attorney's Office for the Western District of Pennsylvania has revealed no responsive records regarding [plea negotiations in this case]"); 9/21/17 Letter from Federal Public Defender, Def. Ex. "F", Docket No. 204-6 ("Mr. Hackney informs me he has no independent memory of your being offered nine years in prison prior to the last trial."); Docket No. 217 ("The government has inspected the physical file pertaining to Penn's case and there are no physical copies of the emails in question… Due to the age of the alleged emails in question, former AUSA Kovac's emails are no longer available, as the Department of Justice's email archive only saves emails for a period of three years.").

> expressed a willingness to accept a 10-year offer, but ask[ed]
> Mr. Hackney to see if Mr. Kovac would at the least come down
> to the applicable guideline range which [Penn] understood it to
> be 77-96 months at level 24 [and criminal history] category IV."
> (Docket No. 203 at ¶ 13).

- "[I]n July of 2015, via legal mail sent by Mr. Hackney's
  secretary, [defendant] received copies of a string of emails
  between Mr. Hackney and Mr. Kovac regarding the possibility
  of a plea offer under 10 years."  (Docket No. 203 at ¶ 15).

- Penn "expressed" to his counsel in July of 2015 that he wanted
  to accept a plea deal and "instructed Mr. Hackney to continue
  engaging in plea negotiations."  (Docket No. 203 at ¶¶ 16; 17;
  18).

- Handwritten notes from Mr. Hackney indicate that on July 29,
  2015 he had some discussion with the prosecutor, identified by
  his initials "PDK" which state "so ask for 9" and "not taking 9."
  (Docket No. 204-6 at 3).

- In August of 2015, during an attorney-visit, Penn asked Mr.
  Hackney about plea negotiations and was told that he had not
  heard from Mr. Kovac.  (Docket No. 203 at ¶ 19).

- There was "no further discussion of plea offer," Penn went to
  trial and was once again convicted of violating § 922(g)(1).

Taken together, such evidence shows that the prosecutor was considering making an offer for Penn

to plead guilty to a different offense, possession of a stolen firearm, in violation of 18 U.S.C. §

922(j), which has a statutory maximum penalty of 10 years' incarceration.  Undoubtedly, this

proposal was contemplated by the parties to avoid the application of the 15-year mandatory

minimum penalty under ACCA which had been applied at the initial sentencing hearing. (See

Docket No. 86).  Yet, Penn admits that he knew that such offer was contingent on the prosecutor

obtaining approval from his supervisors in the U.S. Attorney's Office.  And, the evidence is

uncontested that the prosecutor neither obtained such approval nor made a formal plea agreement

offer prior to the second trial.  Indeed, no plea agreement was ever drafted by the prosecutor and

forwarded to the defense and a plea agreement would have been required since the attorneys had discussed a guilty plea to a different offense than the § 922(g)(1) charge set forth in the Indictment.

Third, as stated above, a criminal defendant has "'no right to be offered a plea," and "[i]f no plea offer is made ... [ineffective assistance of counsel] simply does not arise." *Slane*, 2015 WL 728481, at *16 (quoting *Lafler*, 132 S.Ct. at 1385). Preliminary negotiations concerning a potential plea agreement do not arise to the level of an offer unless the parties manifest an intent to be bound by the pertinent terms, something which did not occur in this case. *Id*. at *17. Instead, the evidence shows back and forth negotiations between counsel in this regard concerning different terms, without a formal offer being extended by the Government or an agreement to resolve the case short of a second trial. "Put more colloquially, to consummate a plea bargain, it takes two to tango, and there is no reason to believe that the Government wanted to dance." *United States v. Segura*, 209 F. App'x 128, 136 (3d Cir. 2006). Since no formal plea offer was extended, defense counsel was not ineffective for failing to achieve a plea agreement on behalf of his client which he now claims he would have accepted.

Overall, Penn does not have a right to be offered a plea agreement by the Government and as no such offer was made, he was not prejudiced by any advice provided by his counsel. *Lafler*, 132 S.Ct. at 1385.

V.     CONCLUSION

For all of these reasons, Penn's motions to vacate [201], [208] are denied. His motion for discovery [203] is also denied, as moot.

*s/Nora Barry Fischer*
Nora Barry Fischer
Senior U.S. District Judge

17

Date:   November 13, 2020

cc/ecf: All counsel of record.

Jesse Nathanial Penn, Jr.
BOP #08068-068
Federal Correctional Complex Yazoo
PO Box 5000
Yazoo City, MS 39194
(via first class mail).